AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of California

FILED

SEP 20 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                    DEPUTY

| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) |
| | ) Case No. '19 MJ4076 |
| One Red Apple iPhone Seized as Exhibit 3 | ) |
| Under FP&F Number 2019-2506-00071501 | ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A (incorporated herein)

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B (incorporated herein)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
| --- | --- |
| 21 U.S.C. Secs. 952, 960, and 963; 21 U.S.C. Secs. 841 and 846; 21 U.S.C. Secs. 843(b) | Import. of CS ( and Conspiracy); Distr. and Poss. with Intent to Distr. CS (and Conspiracy); and Unlawful Use of a Communication Facility |

The application is based on these facts:

See attached Affidavit (incorporated herein)

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Gary Roy, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  9/20/19

_____
*Judge's signature*

City and state:  San Diego, California

Hon. Allison H. Goddard, U.S. Magistrate Judge
*Printed name and title*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| IN THE MATTER OF THE SEARCH OF | **AFFIDAVIT OF SPECIAL AGENT GARY ROY  IN SUPPORT OF A SEARCH WARRANT** |
|---|---|
| One Red Apple iPhone Seized as Exhibit 3 Under FP&F Number 2019-2506-00071501 | |

I, Special Agent Gary Roy, having been duly sworn, declare and state as follows:

### I.

### **INTRODUCTION**

1.    I make this affidavit in support of an application for a warrant to search the following electronic devices:

> One Red Apple iPhone
> Seized as Exhibit 3
> Under FP&F Number 2019-2506-00071501
> (**Target Device**)

and seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960, and 963, Unlawful Importation of a Controlled Substance (and Conspiracy to do the same); Title 21, United States Code, Sections 841 and 846, Distribution and Possession with the Intent to Distribute Controlled Substance (and Conspiracy to do the same); and Section 843(b), Unlawful Use of a Communication Facility (the **Target Offenses**).

2.    The **Target Device** was seized from Defendant Aldo Rodriguez-Olea (**Defendant**) at the time of his arrest for Importation of Methamphetamine on April 27,

2019, at the Otay Mesa Port of Entry. The **Target Device** was found in Defendant's vehicle at the time of his arrest. The **Target Device** is currently stored in the vault located at 9495 Customshouse Plaza, in San Diego, California.

3.     The search of the **Target Device** supports an investigation and prosecution of Defendant for the Target Offenses. Based on the information below, there is probable cause to believe that a search of the **Target Device**, as described in Attachment A will produce evidence of the Target Offenses, as described in Attachment B.

4.     The following is based upon my experience and training, investigation, and consultation with other law enforcement agents and officers experienced in narcotics violations, including the Target Offenses. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because I make this affidavit for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only sets forth those facts believed to be necessary to establish probable cause. Dates and times are approximate, and refer to Pacific Standard Time (PST) unless otherwise specified.

## II.

## AFFIANT'S EXPERIENCE AND TRAINING

5.     I am a Special Agent (SA) with ICE-HSI and have been so employed since February 2018. I am currently assigned to the Deputy Special Agent in Charge, San Ysidro Office, Contraband Smuggling Group 1, and my duties include investigating the trafficking of illicit controlled substances and the importation and distribution of illegal substances. I have training and experience in multiple investigative areas, to include conducting investigations and making arrests based on violations of Title 21, United States Code Sections Criminal.

6.     I have had approximately 23 weeks of intensive training at the Federal Law Enforcement Training Center at Glynco, Georgia. These 23 weeks were comprised of approximately  12  weeks  of  the  basic  criminal  investigator  training  program  and

approximately 11 weeks of ICE Special Agent Training. I have received training in identifying various controlled substances and conducting Title 21 controlled substances investigations. Prior to working for HSI, I worked for the United States Border Patrol, as a Border Patrol Agent, for approximately twelve years.

7.     I am a federal law enforcement officer within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure. I am authorized under Rule 41(a) to make applications for search and seizure warrants and to serve arrest warrants. I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

8.     I have personally participated in and conducted investigations of violations of various State and Federal criminal laws, including those related to narcotics violations. I have arrested or participated in the arrest of persons for violations of the Controlled Substances Act. In these cases, I have conducted interviews with the arrested persons and their associates. I have conducted surveillance of narcotics smugglers as they conduct their smuggling activity while crossing the border from Mexico into the United States. Through these investigative activities, I have gained a working knowledge and insight into the typical activity of narcotics smugglers, and the structure of their narcotics smuggling networks. In addition, I speak regularly with narcotics investigators at the federal, state and local level regarding the manner in which sellers of narcotics store, transport and sell narcotics.

9.     I have participated in many aspects of criminal investigations including the issuance of subpoenas, reviewing evidence, conducting physical and electronic surveillance, working with informants, and the execution of search and arrest warrants.

10.     Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities. This is particularly true in cases involving distributional quantities of

3

hard narcotics, such as cocaine, heroin, and methamphetamine. Typically, load drivers smuggling narcotics across the border from Mexico into the United States are in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substances. Narcotics smugglers and their organizations use cellular/mobile telephones, in part, because these individuals believe law enforcement is unable to track the phone numbers of calls placed to and from cellular/mobile telephones.

11. Based upon my training and experience as an HSI Special Agent, my participation in the investigation of narcotic organizations, and consultations with law enforcement officers experienced with narcotic trafficking investigations, and all the facts and opinions set forth in this Affidavit, I submit the following:

a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, email, Internet, social networking websites, and voice messages.

b. Drug smugglers believe that cellular telephones provide greater insulation and protection against court-ordered wiretaps, and they believe in the inability of law enforcement personnel to simultaneously track the originating and destination telephone numbers of calls placed to and from their cellular telephone.

c. Drug smugglers will use cellular telephones because they are able to monitor the progress of their illegal cargo while the conveyance is in transit.

d. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations to facilitate the further distribution of their illegal cargo within the United States.

e. Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

f. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity, including the presence and location of marked

1  and unmarked units, as well as the operational status of Border Patrol checkpoints or Ports
2  of Entry within the United States.

3         g.     The use of cellular telephones by drug smugglers tends to generate
4  evidence that is stored on the cellular telephones, including, but not limited to emails, text
5  messages, photographs, audio files, call logs, address book entries, IP addresses, social
6  network data, and location data.

7     12.   Subscriber Identity Module (SIM) Cards, also known as subscriber identity
8  modules, are smart cards that store data for cellular telephone subscribers. Such data
9  includes user identity, location and phone number, network authorization data, personal
10  security keys, contact lists and stored text messages. Much of the evidence generated by a
11  smuggler's use of a cellular telephone would likely be stored on any SIM Card that has
12  been utilized in connection with that telephone.

13     13.   Based upon my training and experience as a Special Agent, and consultations
14  with law enforcement officers experienced in narcotics smuggling investigations, and all
15  the facts and opinions set forth in this affidavit, I have learned that cellular/mobile
16  telephones often contain electronic records, phone logs and contacts, voice and text
17  communications, and data such as emails, text messages, chats and chat logs from various
18  third-party applications, photographs, audio files, videos, and location data. This
19  information can be stored within disks, memory cards, deleted data, remnant data, slack
20  space, and temporary or permanent files contained on or in the cellular/mobile telephone.
21  Specifically, I have learned, through my training and education, that searches of
22  cellular/mobile telephones associated with narcotics smuggling investigations yield
23  evidence:

24         a.     tending to indicate efforts to import methamphetamine, or other
25  federally controlled substances from Mexico into the United States, and to distribute
26  methamphetamine or other federally controlled substances within the United States;

27         b.     tending to identify accounts, facilities, storage devices, and/or
28  services—such as email addresses, IP addresses, and phone numbers—used to facilitate

5

the importation of methamphetamine or other federally controlled substances from Mexico into the United States, and the distribution of methamphetamine or other federally controlled substances within the United States;

c.      tending to identify co-conspirators, criminal associates, or others involved in the importation of methamphetamine or other federally controlled substances from Mexico into the United States, or the distribution of methamphetamine or other federally controlled substances within the United States;

d.      tending to identify travel to or presence at locations involved in the importationof methamphetamine or other federally controlled substances from Mexico into the United States, or the distribution of methamphetamine of other federally controlled substances within the United States;

e.      tending to identify the user of, or persons with control over or access to, cellular/mobile telephone(s); and/or

f.      tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## III.

## STATEMENT OF PROBABLE CAUSE

### A.      DEFENDANT'S ARREST

14.      On April 26, 2019, at approximately 11:20 p.m., Aldo Rodriguez-Olea (Defendant) applied for admission to the United States at the Otay Mesa Port of Entry. At the time, Defendant was the driver and sole occupant of a grey 2005 Kia Rio sedan bearing California license plate 5RFU895.

15.      Customs and Border Protection Officer (CBPO) Davis was conducting primary inspection during this time. When Defendant arrived at the primary inspection booth, CBPO Davis asked him what he was bringing from Mexico and Defendant said he was bringing "food." CBPO Davis asked Defendant to open the Kia's trunk and CBPO Davis found three six-packs of Mexican beer inside. CBPO Davis then asked Defendant

1  for the vehicle's registration and it had another individual's name on it. CBPO Davis
2  referred Defendant for secondary inspection based on excessive undeclared alcohol.

3      16.  Prior to reaching the secondary inspection lot, Defendant's Kia was scanned
4  using a Z-Portal machine. CBPO Spirakes reviewed the scanned images of the Kia and
5  found anomalies that appeared to be in the vehicle's quarter panels.

6      17.  In the secondary inspection lot, CBPO Morales conducted a physical
7  inspection of the Kia Rio. During his inspection, he found 24 packages in the vehicle's gas
8  tank, 16 in the fenders, and 3 packages in the rear driver side quarter panel. These packages
9  weighed a total of 22.98 kilograms and field tested positive for the properties of
10  methamphetamine. After the drugs were discovered and removed from the Kia Rio,
11  Defendant was placed under arrest at approximately 12:08 a.m. on April 27, 2019.

12  **B.  DEFENDANT'S BORDER CROSSING HISTORY**

13      18.  For more than a year prior to April 2019, Defendant did not cross the border
14  frequently. He only crossed twice in all of 2018.

15      19.  In April 2019, Defendant began crossing the border every couple days. He
16  crossed on: (1) April 6, 2019 (in the Kia); (2) April 12, 2019 (pedestrian); (3) April 14,
17  2019 (in the Kia); (4) April 16, 2019 (pedestrian); (5) April 18, 2019 (in the Kia); and
18  (6) April 27, 2019 (in the Kia).

19      20.  Based on my experience investigating narcotics smugglers, Defendant may
20  have used the **Target Device** to coordinate with the other parties involved regarding the
21  importation of methamphetamine. I believe that recent calls made and received, telephone
22  numbers, contact names, electronic mail (email) addresses, appointment dates, text
23  messages, email messages, messages and posts from social networking sites, pictures, and
24  other digital information may be stored in the memory of the **Target Device**. This data
25  may include information that is relevant to Defendant's narcotics trafficking activities,
26  including identifying other persons involved in their narcotics trafficking activities.

27      21.  Drug trafficking conspiracies require intricate planning and coordination. This
28  often occurs days, weeks, or even months prior to the actual importation of the drugs into

the United States. All parties involved communicate with one another in efforts to ensure success in getting their valuable cargo to its destination within the United States. Accordingly, probable cause exists to believe that evidence of the aforementioned offense exists on the **Target Device** for the period of January 27, 2019 through April 27, 2019.

## IV.

## METHODOLOGY

22.     It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

23.     Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the **Target Device**

1  and memory card(s) will employ search protocols directed exclusively to the identification
2  and extraction of data within the scope of this warrant.

3      24.    Based on the foregoing, identifying and extracting data subject to seizure
4  pursuant to this warrant may require a range of data analysis techniques, including manual
5  review, and, consequently, may take weeks or months. The personnel conducting the
6  identification and extraction of data will complete the analysis within ninety (90) days of
7  the date the warrant is signed, absent further application to this court.

8                                        **V.**
9                                  **CONCLUSION**

10     25.    Based on all of the facts and circumstances described above, my training and
11 experience, and consultations with other law enforcement officers, there is probable cause
12 to conclude that Defendant utilized the **Target Device** to facilitate the commission of the
13 Target Offenses.

14     26.    Given the dates when Defendant's crossing patterns shifted from crossing via
15 the pedestrian lanes, to crossing the border in a vehicle, to crossing the border in the Kia,
16 probable case exists to believe that evidence of aforementioned offenses exists on the
17 **Target Device** from the period of January 27, 2019 to April 27, 2019.

18     27.    Because the **Target Device** was promptly seized during the investigation of
19 Defendant's drug trafficking activities and has been securely stored, there is probable cause
20 to believe that evidence of illegal activity committed by Defendant continues to exist on
21 the **Target Device**.

22 //
23 //
24 //
25 //
26 //
27 //
28 //

1    28.    Based upon my experience and training, consultation with other agents in
2  narcotics investigations, consultation with other sources of information, and the facts set
3  forth herein, I believe that the items to be seized set forth in Attachment B (incorporated
4  herein) are likely to be found in the property to be searched described in Attachment A
5  (incorporated herein). Therefore, I respectfully request that the Court issue a warrant
6  authorizing me, or another federal law enforcement agent specially trained in digital
7  evidence recovery, to search the items described in Attachment A, and seize the items listed
8  in Attachment B.

9       I declare under penalty of perjury that the foregoing is true and correct to the best of
10  my knowledge and belief.

Special Agent Gary Roy
Homeland Security Investigations

Sworn to and subscribed before me this _____ day of September, 2019.

HON. ALLISON H. GODDARD
UNITED STATES MAGISTRATE JUDGE

## **ATTACHMENT A**

### PROPERTY TO BE SEARCHED

The following property is to be searched in connection with an investigation of violation of Title 21, United States Code, Sections 952, 960, and 963, Unlawful Importation of a Controlled Substance (and Conspiracy to do the same); Title 21, United States Code, Sections 841 and 846, Distribution and Possession with the Intent to Distribute Controlled Substances (and Conspiracy to do the same); and Section 843(b), Unlawful Use of a Communication Facility:

> One Red Apple iPhone
> Seized as Exhibit 3
> Under FP&F Number 2019-2506-00071501
> (**Target Device**)

The **Target Device** is currently in the possession of the Department of Homeland Security, Homeland Security Investigations as evidence and is being stored in the vault located at 9495 Customshouse Plaza, in San Diego, California.

## ATTACHMENT B

Authorization to search the **Target Device**, described in Attachment A, includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the **Target Device** for evidence described below. The seizure and search of the **Target Device** shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats, and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of January 27, 2019 to April 27, 2019:

a.     tending to indicate efforts to import methamphetamine, or other federally controlled substances from Mexico into the United States, and to distribute methamphetamine or other federally controlled substances within the United States;

b.     tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the importation of methamphetamine or other federally controlled substances from Mexico into the United States, and the distribution of methamphetamine or other federally controlled substances within the United States;

c.     tending to identify co-conspirators, criminal associates, or others involved in the importation of methamphetamine or other federally controlled substances from Mexico into the United States, or the distribution of methamphetamine or other federally controlled substances within the United States;

d.     tending to identify travel to or presence at locations involved in the importationof methamphetamine or other federally controlled substances from Mexico into the United States, or the distribution of methamphetamine of other federally controlled substances within the United States;

e.     tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

  f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963, Unlawful Importation of a Controlled Substance (and Conspiracy to do the same); Title 21, United States Code, Sections 841 and 846, Distribution and Possession with the Intent to Distribute Controlled Substance (and Conspiracy to do the same); and Section 843(b), Unlawful Use of a Communication Facility.